Hass, Appellant, v. Equity Theatres, Inc.

226

Argued October 24, 1930.

Before
TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNING-
HAM and BALDRIGE, JJ.

*Gordon Butterworth,* for appellant.

*H. H. Krekstein* of *Cohen, Schweidel & Krekstein,*
for appellee.

OPINION BY TREXLER, P. J., January 30, 1931:

J. Linden Tappan and the Rothwell Company, Inc.,
entered into an agreement wherein Tappan was en-
gaged to furnish for two years, regularly, 2,500 copies
per week of the programs for the purposes of a theatre
which was owned and operated by the Rothwell Com-
pany; the data for said programs to be furnished by
the theatre company each week, six half pages of the
program being reserved for the theatre program and
two half pages for press notices, the consideration
mentioned being, "the solicitation of the several ad-
vertisers in the said program and the sum of $1.00"

paid to Tappan by the theatre company. If the theatre were leased or sold, proper provision was to be made for the "continuance of the *use* of said programs during the full term." Tappan transferred his interest in the contract to Herman A. Hass and the Rockwell Company leased the theatre to the Equity Theatres, Inc., who assumed the covenants of the written contract, but subsequently ceased to distribute the programs as received and left them in the unopened packages and threw them out as waste. The advertisers consequently refused to pay for the advertisements and for the loss ensuing to the plaintiff, this suit was brought.

At the trial, the controversy centered on the question as to what the agreement meant. The plaintiff sought to introduce testimony as to the course of conduct of the parties after the contract was made as evidence of the construction placed upon it by them. This the court refused to admit.

The plaintiff endeavored to prove the custom of the trade as to theatre programs which was likewise barred by the court. The court held that under the contract there was no obligation on the part of the defendant to distribute the programs, that it could make use of them as suited its purpose and gave binding instructions for the defendant. We think the court erred.

There is no ambiguity as to what is meant by the term "theatre program." Programs are generally used in theatres and their purpose is to give the successive events in the performance and the announcements of future attractions. They usually contain advertisements of various business houses. These are matters of common knowledge. The contract in question definitely provided that the items for the programs should be furnished by the theatre company. The advertisers on the pages of the programs were to be

secured by Tappan. The programs were designed for use and that use was to be in connection with the theatre. Both parties knew that the inducement that led the persons to advertise in the programs was the resultant benefit received from the publicity which followed their distribution in the theatre. In case of the leasing or sale of the theatre to another, the *use* of the programs was to continue during the full term of the contract. There can be no question that the use in contemplation of the parties was the distribution of the programs as before stated. The contract is plain and requires no extrinsic evidence to assist in its interpretation. The opportunity afforded Tappan to secure pay for the advertisements entered into the consideration as so plainly stated in the contract. If the court took the position that the contract was ambiguous, it was the plaintiff's right to show what construction had been placed upon the contract by the actions of the parties in carrying it out.

The judgment is reversed with a new venire.